# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| CHAD POWE, JERMAINE WILLIS, BENJAMIN COX, GWENEVERE ALEXANDER-TELL, CRISTEL ROTHWELL, TAMMIE HALL, JOSEPH BARLAY on behalf of themselves and all others similarly situated, <br><br> Plaintiff <br><br> v. <br><br> BANK OF AMERICA, N.A.; BANK OF AMERICA CORPORATION, <br><br> Defendants. | **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Chad Powe ("Powe"), Jermaine Willis ("Willis") Benjamin Cox ("Cox"), Gwenevere Alexander-Tell ("Alexander-Tell"), Cristel Rothwell ("Rothwell"), Tammie Hall ("Hall"), and Joseph Barlay ("Barlay") on behalf of themselves and all others similarly situated, allege the following Class Action Complaint against Defendants Bank of America, N.A., and Bank of America Corporation (collectively, "Bank of America" or "Defendants") upon personal knowledge as to themselves and their own actions, and upon information and belief, including the investigation of counsel, as to all other matters.

## INTRODUCTION

1. This Class Action (hereinafter the "Action") arises out of Bank of America's unfair and deceptive business practices harming and continuing to harm many thousands of consumers over a number of years commencing in or about 2012 and thereafter, by opening "fake" accounts in numerous product lines and services, including savings or checking accounts.

2. Bank of America - a global bank serving approximately 68 million people and businesses throughout the United States, and currently the second largest banking institution

1

providing consumer financial services in America – maintains a business model that relies, in substantial part, on securing and enrolling as many customers who accept and utilize its banking products as possible. The banking products that Bank of America offers to consumers include savings accounts, checking accounts, and similar banking products, which, in the ordinary course of business, are opened by and on behalf of customers with their consent in order to meet their banking needs.

3. Beginning in or about 2012 and thereafter, Bank of America employees have been illegally applying for and enrolling consumers in fake consumer savings or checking accounts, *inter alia*, without the consumer's knowledge. These practices have inured to the detriment of consumers and have caused them to suffer damages, as more fully discussed below, when they failed to, for example, maintain mandatory account balances or pay fees for accounts that they did not even know existed, and Bank of America thereafter charged such victimized consumers penalties and other fees as a consequence.

4. In addition to imposing bank charges and late fees on such accounts, Plaintiffs are informed and believe and thereupon allege that Bank of America, as a direct and approximate consequence of its unfair and deceptive business practices, further profits and benefits from the opening of "fake" savings and checking accounts without customer consent by being able to artificially inflate their "new account holder" statistical matrix on their filings with the Securities and Exchange Commission.

5. Plaintiff brings this action in order to hold Bank of America accountable, to force it to stop engaging in this unlawful conduct, and to recover the damages suffered by themselves and all others similarly situated.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA") because (i) the proposed class consists of well over 100 members; (ii) the parties are minimally diverse as members of the proposed class, including

Plaintiffs, are citizens of a state different from Defendants' home state; and (iii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs. Although the damages to each class member may be small, given the large number of affected Bank of America customers, their aggregate damages exceed the jurisdictional threshold.

7. This Court has personal jurisdiction over Defendants because they maintain their principal places of business in Charlotte, North Carolina, and the events giving rise to this Action emanated from or occurred in Charlotte, North Carolina, and the Defendants have continuous and systematic contacts with the state of North Carolina to constitutionally permit this Court to exercise jurisdiction.

8. In accordance with 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the events giving rise to this claim occurred here and because Defendants are subject to this Court's personal jurisdiction with respect to the claims advanced in this Action.

## PARTIES

### *Plaintiffs*

**Chad Powe**

9. Plaintiff Chad Powe is, and at all relevant times was, a resident of Loganville, Georgia. Plaintiff Powe has been a customer of Bank of America since approximately 2000, when he opened a checking account that he maintained for approximately five years. Thereafter, in 2021, Plaintiff Powe opened another checking account with Bank of America, which he still maintains.

10. In approximately May or June of 2020, Plaintiff Powe received notice of another checking account opened in his name at Bank of America. Plaintiff Powe did not authorize the opening of this additional checking account. The unauthorized checking account had a negative balance resulting from the imposition of account fees and insufficient funds ("NSF") charges arising from the fact that the balance in the account was too low to cover the account fees. After learning of the existence of this additional unauthorized checking account, Plaintiff Powe personally visited a Bank of America branch office to close the unauthorized account, after which representatives of Bank of America acknowledged that the account appeared to be fraudulent.

3

While Bank of America reversed the charges imposed by Bank of America against the unauthorized checking account and closed the account, Plaintiff Powe is informed and believes that the unauthorized checking account appears on his credit report and that he has sustained damages.

**Jermaine Willis**

11. Plaintiff Jermaine Willis is, and at all relevant times was, a resident of Rancho Cucamonga, California. Plaintiff Willis has been a client of Bank of America on and off since approximately 2006.

12. In 2018, Plaintiff Willis closed a checking account that he had with Bank of America. In 2022, Plaintiff Willis learned of the unauthorized opening of a checking account in his name at Bank of America. Plaintiff Willis believes that the unauthorized account was opened in or about 2021. When Plaintiff Willis learned of the unauthorized account in 2022, the account already had a negative balance as a result of the imposition of NSF charges for failure to maintain minimum account balances.

13. Plaintiff Willis believes and is informed that the unauthorized checking account appears on his credit report and that he has sustained damage as a result of the unauthorized checking account and resulting negative balance in this unauthorized checking account.

**Benjamin Cox**

14. Plaintiff Benjamin Cox is, and at all relevant times was, a resident of Kinston, North Carolina. Plaintiff Cox is not currently a Bank of America customer. Plaintiff Cox previously had a savings account with Bank of America that he closed in 2020. In or about 2019, Plaintiff Cox was made aware of a checking account opened in his name at Bank of America. When he learned of the unauthorized checking account, it already had a negative balance as a result of fees assessed by Bank of America as a result of not meeting minimum account balance requirements. Plaintiff Cox attempted to close the unauthorized account online, but was told that he could only do so at a

4

Bank of America branch. Thereafter, Plaintiff Cox went to a Bank of America branch and closed the unauthorized account. Plaintiff Cox believes and is informed that the unauthorized checking account appears on his credit report and that he has sustained damage as a result of the unauthorized checking account and resulting negative balance in this unauthorized checking account.

**Gwenevere Alexander-Tell**

15. Plaintiff Gwenevere Alexander-Tell is, and at all relevant times was, a resident of Mounds View, Minnesota. Plaintiff Alexander-Tell is not currently a customer of Bank of America.

16. On May 8, 2022, Plaintiff Alexander-Tell learned of the unauthorized opening of a checking account in her name at Bank America. Plaintiff Alexander-Tell received an email from Bank of America that an Advantage SafeBalance Banking account was opened. When Plaintiff Alexander-Tell learned of the unauthorized account in May 2022, she immediately requested the closure of the account.

17. Defendant conceded on October 24, 2022, that Plaintiff Alexander-Tell did not open the account. On October 25, 2022, Bank of America closed the unauthorized account.

18. Plaintiff spent a significant amount of time in requesting Defendant close her account.

**Cristel Rothwell**

19. Plaintiff Cristel Rothwell is, and at all relevant times was, a resident of Jacksonville, Florida. Plaintiff Rothwell is not currently a Bank of America customer. Plaintiff Rothwell previously had a checking account that she closed in 1999.

20. In 2022, Plaintiff Cristel Rothwell learned of the unauthorized opening of a checking account in her name at Bank of America. Plaintiff Rothwell believes that the unauthorized account was opened in or about August 2022. When Plaintiff Rothwell learned of

the unauthorized account in 2022, she requested Bank of America to close the unauthorized account.

21. Defendant has conceded in 2022 that Plaintiff Rothwell did not open the account.

22. Plaintiff Rothwell spent around five (5) hours total speaking to Bank of America Representatives over the phone and filing a police report to close the unauthorized account. Plaintiff spent $30.00 to send the requested materials to the Bank of America Fraud Department to prove that the account was fraudulent.

**Tammie Hall**

23. Plaintiff Tammie Hall is, and at all relevant times was, a resident of Wilmington, North Carolina. Plaintiff Hall is not currently a customer of Bank of America.

24. In 2022, Plaintiff Hall learned of the unauthorized opening of an Advantage Safe Balance checking account in her name at Bank of America. Plaintiff Hall believes that the unauthorized account was opened in or about the Fall or Winter of 2022.

25. Defendant conceded on March 22, 2023, that Plaintiff Hall did not open the account.

26. Plaintiff Hall had spent about five (5) months speaking to Bank of America representatives over the phone to close the account.

27. Plaintiff Hall has spent time working with credit counselors to insure improper reports on her credit report are removed.

**Joseph Barlay**

28. Plaintiff Joseph Barlay is, and at all relevant times was, a resident of Somerset, New Jersey. Plaintiff Barlay has been a client of Bank of America since 2008.

29. On April 1, 2023, Plaintiff Barlay learned of the unauthorized opening of a credit card in his name at Bank of America. Plaintiff Barlay believes that the unauthorized account was

6

Case 3:23-cv-00756-MOC-DCK    Document 1    Filed 11/09/23    Page 6 of 19

opened in or about 2023. When Plaintiff Barlay learned of the unauthorized account in 2023, he requested that Bank of America close the unauthorized account.

30. Defendant conceded on August 14, 2023, that Plaintiff Barlay did not open the account.

31. Plaintiff Barlay has spent an hour every few days over the course of four (4) months speaking to Bank of America representatives over the phone to close the account.

*Defendants*

**Bank of America, N.A.**

32. Defendant Bank of America, N.A. is a national banking association chartered under the laws of the United States with its principal place of business located in Charlotte, North Carolina. Defendant operates more than 3,900 full-service bank branches nationwide, through which it offers banking products, including the products mentioned herein.

**Bank of America Corporation**

33. Defendant Bank of America Corporation is a Delaware Corporation with its principal place of business located in Charlotte, North Carolina and is a bank holding company as well as a financial holding company.

## SUBSTANTIVE FACTS

**Background**

**A History of Abuse**

34. Over the years, Bank of America employees have engaged in misconduct by opening fake credit card accounts or fake bank accounts.

35. With regard to credit card accounts, on July 11, 2023, the Consumer Financial Protection Bureau ("CFPB") ordered Bank of America to pay more than $100 million to

customers, in part for misappropriating sensitive personal information to open credit card accounts without customer knowledge or authorization.[1]

36. According to the CFPB, Bank of America's practices violated, *inter alia*, the Consumer Financial Protection Act ("CFPA"), by engaging in unfair and deceptive or otherwise prohibited acts or practices, the Fair Credit Reporting Act, by using or obtaining consumer reports without a permissible purpose in connection with the opening of unauthorized credit cards, and the Truth in Lending Act, implementing Regulation Z, by issuing credit cards to consumers without their knowledge or consent. [2,3,4]

37. In response to sales pressure from Bank of America and/or to receive incentives, some Bank of America employees had submitted applications and issued credit cards without consumers' consent.

38. Bank of America misused or improperly obtained consumer reports to consider consumers for new credit cards even when the consumers had not applied for or did not want the products and where Bank of America did not otherwise have a permissible purpose for the consumer reports.

39. During what the CFPB termed the "Account-Opening Findings Period," Bank of America sometimes generated associated fees from credit card accounts opened without consumers' consent.[5]

40. On July 11, 2023, the CFPB filed a Consent Order and Stipulation, in the proceeding under File No. 2023-CFPB-0007, requiring Bank of America to, among other things, pay a civil penalty of $30 million to the Bureau with respect to fake credit card accounts.

**Defendants' "Fake Bank Account" Practices**

---

[1] https://www.consumerfinance.gov/about-us/newsroom/bank-of-america-for-illegally-chargingjunk-fees-withholding-credit-card-rewards-opening-fake-accounts/ (last visited September 19, 2023).
[2] The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*.
[3] The Truth in Lending Act ("TILA"), 15 U.S.C. 1601, *et seq*.
[4] 12 C.F.R. Part 1026.
[5] *In the Matter of: Bank of America, N.A.*, No. 2023-CFPB-0007 (CFPB), Consent Order filed July 11, 2023, at ¶¶ 3(b), 26.

41. While the CFPB consent decree was focused on bank employees opening up fake credit card accounts or repeatedly charging NSF fees on previously authorized bank checking or savings accounts, the claims here arise from yet another ongoing unfair and deceptive practice being engaged in by Defendants' employees in which they use consumer information, including their confidential personal identifying information, to open and establish unauthorized bank checking accounts upon which NSF fees have been imposed for which the titled fake account holder is ostensibly responsible – even though he or she did not authorize the opening of such fake account and, understandably, was unaware of its existence until some period of time thereafter due to the NSF charge.

42. This wrongful and deceitful practice of opening such a fake account has created serious problems for Plaintiffs and other victims. First, it has created a threat to such consumers credit ratings to the extent the NSF charges were reported to or otherwise become known to credit reporting agencies. Negative balances on bank accounts – including checking accounts with NSF charges – are reported to credit agencies. Second, Plaintiffs and similarly situated consumers who have been the victims of such fake accounts must and do spend their valuable time and energy to compel Defendants to both cease and desist from further holding an unauthorized account in their name – in other words, terminating the account – and reversing or removing NSF charges that should never have been incurred in the first place. And Plaintiff and similarly situated consumers – Class members – are forced to deal with the negative impact such NSF charges on fake accounts have on their credit reports or ratings.

43. Each of the Plaintiffs named above has been damaged and suffered injury-in-fact as a consequence of Defendants' unlawful, unfair and deceptive practice of opening fake accounts in their names, without their authority.

## CLASS ACTION ALLEGATIONS

44. Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a class of similarly situated individuals.

45. Plaintiffs seek to represent a Nationwide Class defined as follows:

> All citizens of the United States who had a checking account opened in their name by Bank of America without their knowledge, authorization, or consent within the last four years, including but not limited to those respecting which NSF charges were placed on the account.[6]

46. This action has been brought and may properly be maintained as a class action under federal law and satisfies the numerosity, commonality, typicality, and adequacy requirements of maintaining a class action under Fed. R. Civ. P. 23(a).

47. The proposed class is easily ascertainable. The number and identity of the class members are determinable from Defendants' records.

48. *Numerosity*: the proposed class is so numerous that the joinder of all such persons is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Fed. R. Civ. P. 23(a)(1).

49. *Commonality*: there is a well-defined commonality of interest in the questions of law and fact involving and affecting the class in that Plaintiffs and all members of the proposed class have been harmed by Defendant. Fed. R. Civ. P. 23(a)(2). Specifically, all members of the class were customers of Bank of America, and all members of the class were harmed when Bank of America opened the fake accounts names. The common questions of law and fact include, but are not limited to, the following:

   A. Whether Defendants opened fake accounts in the name of Plaintiffs and other class members without their authorization to do so;

   B. Whether Defendants breached their duty to Plaintiffs and class members or contract to keep personally identifying information confidential;

   C. Whether Defendants reported NSF charges imposed on fake accounts to consumer credit reporting agencies with respect to Plaintiffs and class members;

   D. Whether Defendants were unjustly enriched by the fake accounts it opened on behalf of Plaintiffs and class members;

---

[6] *See* N.C.G.S. § 75-16.2.

E. Whether Defendants engaged in unfair and deceptive trade practices within the meaning of North Carolina law and/or other states' law by or opening fake accounts in the name of Plaintiffs and Class members without their authorization;

F. Whether Plaintiffs and class members are entitled to a declaratory judgment that Bank of America's practices were unlawful; and

G. Whether Plaintiffs and class members are entitled to damages.

50. *Typicality*: the claims of Plaintiffs herein are typical of the claims of the members of the class. Plaintiffs and all members of the class sustained damages arising out of Defendants' conduct. These claims could be alleged by any member of the class, and the relief sought is typical of the relief which would be sought by each member of the class in separate actions. Specifically, like Plaintiffs, each class member of the class had an illegal and unauthorized credit card opened in their name by Bank of America. Fed. R. Civ. P. 23(a)(3).

51. *Adequacy of Representation*: Plaintiffs are able to fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Plaintiffs and members of the proposed class. Plaintiffs have retained counsel who are experienced and competent in complex class action litigation. Fed. R. Civ. P. 23(a)(4).

52. *Predominance and Superiority*: the common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual class members. Fed. R. Civ. P. 23(b)(3). A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all class members is impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual class members are small in the sense pertinent to class action analysis, the expense and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the wrongs done to them.

53. Moreover, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantial and substantially more than if the claims are treated as a class action. Prosecution of separate actions by individual members of the proposed classes would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

54. Pursuit of this action as a class action will provide the most efficient mechanism for adjudicating the claims of Plaintiffs and members of the proposed class.

## TOLLING OF STATUTES OF LIMITATIONS

55. Under the circumstances herein, the applicability of any statute of limitations should be deemed to be subject to principles of equitable estoppel, tolling and concealment. Defendants' conduct in opening unagreed-to, unauthorized, and fallacious accounts was hidden and concealed from Plaintiffs and class members, and Plaintiffs and class members were unable to independently discover the nature of the wrongdoing until recently.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT
### (On Behalf of Plaintiffs and the Class)

56. Plaintiffs reallege and incorporate by reference all of the preceding allegations as if restated herein.

57. Plaintiffs and class members agreed to provide certain personally identifying information to Defendants in exchange for Defendants' agreement to provide banking services.

58. Plaintiffs and class members provided their information to Defendants with the understanding that it would be used to facilitate the lawful and appropriate provision of banking services if and only if they explicitly authorized the services.

59. Plaintiffs and class members entered into valid contracts with Defendants whereby they provided their personal information to Defendants, where part of the bargained-for exchange was each Plaintiffs' and class members' agreement to provide Defendants with their personal information and Defendants' agreement not to misuse or abuse that information.

60. On information and belief, this duty and contract was drafted by Defendants and was offered on a take it or leave it basis and should be construed against the drafter to the extent that it may contain any ambiguities.

61. On information and belief, Defendants used Plaintiffs and class members' personal information open the fake accounts.

62. These fake accounts were created without authorization from Plaintiffs or class members.

63. By failing to safeguard Plaintiffs' and class members' personal information, and by using such information for the purpose of opening unauthorized accounts in the names of Plaintiffs and class members, Defendants breached their duty and contract with Plaintiffs and class members.

64. Plaintiffs and class members were injured and have sustained damages as a result of Bank of America's aforesaid breach of its duty to and contract with each of them.

## SECOND CAUSE OF ACTION
## VIOLATIONS OF THE FCRA
### (On Behalf of Plaintiffs and the Class)

65. Plaintiffs reallege and incorporate by reference all of the preceding allegations as if restated herein.

66. Each time that Bank of America opens a new account or starts a new financial service, it obtains, reviews, and uses a "consumer report," as that term is defined in 15 U.S.C § 1681a(d), about the consumer for whom the account is opened or the service started.

67. Bank of America is required by 15 U.S.C. §§ 1681b, 1681n, and 1681o to refrain from obtaining or using consumer reports from consumer reporting agencies ("CRAs") under false pretenses, and without proper authorization from the consumer who is the subject of the report.

68. Obtaining and using consumer reports in the process of opening unauthorized accounts or services is not allowed pursuant to the FCRA, and thus is a violation of federal law.

69. Bank of America has a mandatory duty to use or obtain consumer reports only for permissible purposes, pursuant to 15 U.S.C. § 1681b(f).

70. Despite these clear and unambiguous requirements of the FCRA, during the pertinent times, Defendants regularly pulled consumer reports regarding consumers without their knowledge or consent in order to open such unauthorized fake accounts as part of its cross-selling practices, in violation of the FCRA.

71. Pursuant to 15 U.S.C. §§ 1681n and 1681o, Bank of America is liable for negligently and willfully violating the FCRA by accessing the consumer reports without a permissible purpose or authorization under the FCRA.

### THIRD CAUSE OF ACTION
### UNJUST ENRICHMENT
#### (On Behalf of Plaintiffs and the Class)

72. Plaintiffs reallege and incorporate by reference all of the preceding allegations as if restated herein.

73. As a result of Defendants' unlawful, unfair and deceptive actions described above, Defendants were unjustly enriched at the expense of Plaintiffs and the putative class members

14

through the imposition or payment of fees, penalties, or charges such as NSF charges resulting from fake accounts, that Bank of America unlawfully and/or deceptively opened for customers.

74. Under the circumstances, it would be against equity and good conscience to permit Defendants to retain any ill-gotten benefits derived from Plaintiffs and the class, in light of the fact that Bank of America used illegal, deceptive, and/or unfair practices fake accounts. Thus, it would be unjust and inequitable for Defendants to retain the derived benefits without restitution to Plaintiffs and the class for the monies paid to or value and benefits derived by Defendants as a result of such unfair, deceptive, and/or illegal practices.

## FOURTH CAUSE OF ACTION

## VIOLATION OF NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT

**(On Behalf of Plaintiffs and the Class)**

75. Plaintiffs reallege and incorporate by reference all of the preceding allegations as if restated herein.

76. Defendants are corporations that maintain their principal place of business in North Carolina and that direct and control their nationwide corporate activities from North Carolina.

77. On information and belief, Defendants' practices were directed or otherwise were overseen from their principal place of business in North Carolina.

78. On information and belief, Defendants stored Plaintiffs' customer data in North Carolina, which data was used to open unauthorized accounts.

79. As a result of the foregoing, Defendants' activities are subject to the laws and regulations of the State of North Carolina, including but not limited to the North Carolina Unfair and Deceptive Trade Practices Act ("NC UDTPA"), N.C.G.S. § 75- 1.1, *et seq*.

80. The NC UDTPA "declares unlawful" all "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." N.C.G.S. § 75-1.1(a).

81. For purposes of the NC UDTPA, the term "commerce" includes "all business activities, however denominated." N.C.G.S § 75-1.1(b).

82. Defendants violated the NC UDTPA by engaging in unlawful, unfair, or deceptive business acts and practices in or affecting commerce.

83. As set out plainly above, Defendants engaged in unfair and deceptive acts and practices including but not limited to:

> A. Utilizing Plaintiffs' and class members' personal information to open fake accounts that Plaintiffs and class members had not requested or authorized;
>
> B. On information and belief, representing on internal documentation that Plaintiffs and class members had applied for bank accounts when, in fact, they had not;
>
> C. On information and belief, falsifying documentation to reflect that Plaintiffs and class members had applied for accounts when, in fact, they had not;
>
> D. On information and belief, report to credit reporting agencies NSF charges on Plaintiffs and class members' unauthorized fake accounts;
>
> E. Failing to disclose or fraudulently concealing that Defendants' employees were opening unauthorized fake accounts;
>
> F. Imposing NSF charges on fake accounts; and
>
> G. Such other deceptive and unfair practices as may be proven at trial.

84. Defendants' unfair or deceptive acts and practices as enumerated above occurred in the course of its dealings with consumers, including Plaintiffs and class members, meaning the acts occurred in and affecting commerce.

85. Defendants' actions and practices were negligent, knowing, willful, wanton, and reckless with respect to the rights of Plaintiffs and class members.

86. As a direct and proximate result of Defendants' unfair or deceptive acts and practices, Plaintiffs and class members have incurred actual damages, including the time and expense associated with closing such unauthorized fake accounts, or reversing NSF charges

16

thereon incurred or the loss of time and expense associated with incurring or remedying any unwarranted effects of the unauthorized accounts on their credit scores.

87. Plaintiffs and class members are entitled to recover their actual damages as well as treble damages for Defendants' violation of the NC UDTPA.

## FIFTH CAUSE OF ACTION
## DECLARATORY RELIEF
### (On Behalf of Plaintiffs and the Class)

88. Plaintiffs reallege and incorporate by reference all preceding allegations as if restated herein.

89. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

90. As described above, this Court has jurisdiction over this matter, and therefore may declare the rights of Plaintiffs and the Class.

91. Plaintiffs and the Class therefore seek an order declaring Bank of America's practice of opening unauthorized fake accounts unlawful, and that Defendants are liable to Plaintiffs and the Class for damages caused by that practice.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs and all those similarly situated request that this Honorable Court:

17

1. Issue an Order certifying a class of consumers pursuant to Rule 23 and designate Plaintiffs as representatives on behalf of all consumers who banked with Defendants and on whose behalf Defendants opened unauthorized fake accounts;

2. Issue an Order appointing the undersigned counsel as class counsel pursuant to Rule 23(g);

3. Award Plaintiffs, and all those similarly situated, attorneys' fees, costs and disbursements as allowed pursuant any applicable law;

4. Award Plaintiffs and all those similarly situated damages in excess of $5 million; and

5. Award Plaintiffs and all those similarly situated, further legal and equitable relief that this Court deems appropriate.

DATED: November 9, 2023          COUNSEL FOR PLAINTIFF:

*/s/ Joel R. Rhine*_____
Joel R. Rhine
NCSB 16028
Martin Ramey
NCSB 33617
**Rhine Law Firm, P.C**.
North Carolina State Bar No. 16028
1612 Military Cutoff, Suite 300
Wilmington, NC 28403
Telephone: (910) 772-9960
Facsimile: (910) 772-9062
jrr@rhinelawfirm.com
mjr@rhinelawfirm.com

Stephen R. Basser*
Samuel M. Ward*
**Barrack Rodos & Bacine**

18

One America Plaza
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile (619) 230-1874
sbasser@barrack.com
sward@barrack.com

Charles E. Schaffer
Daniel C. Levin
Pennsylvania Bar No. 76259
Pennsylvania Bar No. 80013
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone : (215) 592-1500
Facsimile : (215) 592-4663

D. Aaron Rihn
**ROBERT PIERCE & ASSOCIATES, P.C.**
707 Grant Street, Suite 125
Pittsburgh, PA 15219
Telephone : (412) 281-7229
Facsimile : (412) 281-4229
arihn@piercelaw.com

**EMERSON FIRM, PLLC**
John G. Emerson*
jemerson@emersonfirm.com
2500 Wilcrest Drive, Suite 300
Houston, TX 77042
Telephone: (800) 551-8649
Facsimile: (501) 286-4659

*pro hac vice application forthcoming*